COLORADO COURT OF APPEALS                                    2017COA61

Court of Appeals No. 16CA1366
Chaffee County District Court No. 15JV7
Honorable Patrick W. Murphy, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of A.D. and Tr.D., Children,

and Concerning M.D. and T.D.,

Respondents-Appellants.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE FREYRE
Hawthorne and Ashby, JJ., concur

Announced May 4, 2017

Jennifer A. Davis, County Attorney, Chip E. Mortimer, Assistant County
Attorney, Salida, Colorado, for Petitioner-Appellee

Donald F. Cutler, IV, Guardian Ad Litem

The Gregory Law Firm, LLC, Christopher S.P. Gregory, Fort Collins, Colorado,
for Respondent-Appellant M.D.

Law Office of Poland Wheeler, P.C., Andrew C. Poland, Lakewood, Colorado, for
Respondent-Appellant T.D.

¶ 1     This termination of parental rights case presents a novel issue — may a county department of social services rely on its Indian Child Welfare Act of 1978 (ICWA) inquiries in a prior case involving the same respondent parents and one of the same children to satisfy its "continuing inquiries" obligation under section 19-1-126(1)(a), C.R.S. 2016, in a new case, and may a trial court find that ICWA does not apply in that new case based solely on the department's inquiries in the prior case?  We answer both of these questions "no" and conclude that the statute requires the department to inquire about Indian heritage in each new proceeding.  Therefore, we reverse the judgment and remand the case to the trial court for further proceedings.

## I.     Prior Case

¶ 2     In September 2013, the Chaffee County Department of Social Services (the Department) initiated a dependency and neglect proceeding involving five-year-old Tr.D.  The shelter order stated, "The Respondents deny that their child, [Tr.D.] is a member of or eligible for membership in an Indian tribe."  The petition stated, "The Department of Human Services has questioned the child's parents and has determined the child is not an Indian child."  The

1

petition was later withdrawn, and the case was successfully closed in September 2014.

## II. Current Case

¶ 3 In February 2015, the Department initiated another dependency and neglect proceeding concerning now six-year-old Tr.D. and six-month-old A.D. after M.D. (father) and T.D. (mother) were arrested on drug charges. The children were placed in foster care because of continued concern about the parents' drug use.

¶ 4 The children were adjudicated dependent and neglected, and treatment plans were developed for both parents. Father's treatment plan required him to (1) find ways to manage pain that did not include the use of controlled substances; (2) abstain from using illegal, prescribed, or nonprescribed controlled substances and live a substance-free lifestyle that would not put the children at risk; (3) maintain a relationship with the children through weekly visitation; and (4) provide a safe and stable living environment that would be suitable for the children. Mother's treatment plan was identical to father's.

¶ 5 Both parents struggled. Despite visitation schedule changes to accommodate their needs, both parents often arrived late, and a

2

number of visits were cancelled due to tardiness. They lost their right to unsupervised visits after testing positive for opiates during a visit, and they failed to maintain consistent employment, housing, and contact information.

¶ 6    Most significantly, neither could overcome addiction. Both parents delayed beginning outpatient treatment, and their participation in that treatment was described as "sporadic at best." They were slow to begin drug testing, missed required tests, and on more than one occasion manipulated the test results. In December 2015, the trial court ordered them to complete inpatient drug treatment. Father began an inpatient program but failed to complete it. Mother completed her inpatient program in February 2016, but she tested positive for opiates only a few days after discharge.

¶ 7    Based on this record, the Department filed a petition to terminate parental rights. The petition stated that "the subject children are NOT Indian Children pursuant to the Indian Child Welfare Act, 25 U.S.C. § 1903(4)." No evidence concerning ICWA was elicited at the termination hearing. After the hearing, the trial

3

court issued a written order terminating parental rights. The order found, "The provisions of I.C.W.A. do not apply to this case."

### III. Indian Child Welfare Act

¶ 8 Mother contends the record fails to support the court's ICWA finding because the Department never asked about possible Indian heritage during the proceedings and, therefore, failed to satisfy its "continuing inquiry" duty under § 19-1-126(1)(a). She argues that the court's reliance on the Department's deficient inquiry is a material error because the applicability of ICWA affects the conduct of the case and the standard of proof to be met before termination of parental rights can be granted.

¶ 9 The Department responds that the ICWA issue was resolved with respect to Tr.D. in the prior case. It argues that the trial court satisfied the requirements of ICWA in this case by taking judicial notice of its ICWA finding in the prior case. It reasons that because A.D. is a full sibling of Tr.D., the court's previous finding that Tr.D. was not an Indian child must also apply to her.

¶ 10 We conclude that § 19-1-126(1)(a), when considered with the relevant federal guidelines and the purposes of ICWA, required the Department to conduct new inquiries in this case to determine

4

whether the children were Indian children.  Because no evidence in the record shows that any inquiries occurred, we agree with mother that the court's order finding ICWA inapplicable is not supported by the record and that further proceedings are required.

## A.    Relevant Law

¶ 11    Indian tribes have an interest in Indian children that is distinct from, but equivalent to, parental interests.  *B.H. v. People in Interest of X.H.*, 138 P.3d 299, 303 (Colo. 2006) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 52 (1989)).  Thus, in a proceeding in which ICWA may apply, tribes must have a meaningful opportunity to participate in determining whether a child who is a subject of the proceeding is an Indian child and to be heard on the issue of the applicability of ICWA.  *Id.*

¶ 12    The policy underlying ICWA is "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families" by establishing federal standards for the removal of children from their families and for their placement in foster or adoptive homes.  25 U.S.C. § 1902 (2012).  Inquiry into a child's Indian heritage "ensures the tribe will be afforded the opportunity to assert its rights under [ICWA] irrespective of the

position of the parents, Indian custodian or state agencies." *In re Kahlen W.*, 285 Cal. Rptr. 507, 511 (Cal. Ct. App. 1991).

¶ 13    To ensure tribes have an opportunity to be heard, § 19-1-126(1)(a) provides that the petitioning or filing party shall "[m]ake continuing inquiries to determine whether the child who is the subject of the proceeding is an Indian child and, if so, shall determine the identity of the Indian child's tribe." *See also B.H.*, 138 P.3d at 302 ("[T]he petitioning party has an affirmative duty to make continuing inquiries to determine whether the subject child is an Indian child."). The trial court has the responsibility of monitoring compliance with ICWA and Colorado's statute. Thus, if the initial pleading in a proceeding in which ICWA may apply does not disclose whether the subject child is an Indian child, it is the court's duty to inquire of the parties whether the child is an Indian child and, if so, whether the parties have complied with ICWA's procedural requirements. § 19-1-126(2); *see also* Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146, 10,152, at B.2(b) (Feb. 25, 2015) (2015 Guidelines) (requiring state courts to ask at the start of any relevant proceeding whether there is reason to believe the child is an Indian

child, and requiring participants in the proceeding to certify on the record whether they have discovered or know of any information suggesting the child is an Indian child).

¶ 14    Statutes enacted for the benefit of Indian tribes, including state-implementing statutes like § 19-1-126, "must be liberally construed in favor of Indian interests." *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985). Indeed, the importance of continuing inquiries is underscored in the 2015 Guidelines, which we recognize are not binding on state courts, but which are instructive when interpreting ICWA-implementing legislation. *See B.H.*, 138 P.3d at 302 n.2 (citing the original Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584, 67585-86 (Nov. 26, 1979), and noting that they "have been considered persuasive by state courts").

¶ 15    Moreover, while not applicable here, we note that new federal regulations that codify this inquiry obligation became effective on December 12, 2016. *See* 25 C.F.R. §§ 23.107-.109, .111 (2016). The new regulations were quickly followed by new guidelines issued in December 2016. *See* Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016),

https://perma.cc/3TCH-8HQM (2016 Guidelines). Consistent with the 2015 Guidelines applicable here, these new regulations and guidelines require the court to ask all participants in the case whether there is reason to know the child is an Indian child and to instruct the participants to inform the court if they later discover information that provides reason to know the child is an Indian child. *See* 25 C.F.R. § 23.107(a); 2016 Guidelines at 11. And, if a new child custody proceeding is initiated for the same child, the court must again inquire into whether there is a reason to know that the child is an Indian child. 25 C.F.R. § 23.107(a).[1]

B. Analysis

---

[1] The guidelines issued in December 2016, Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016), https://perma.cc/3TCH-8HQM (2016 Guidelines), require a court to inquire about ICWA's applicability even if a party fails to assert that ICWA may apply. 2016 Guidelines at 11. They also state that it is "critically important" for inquiries to be made "by courts, State agencies, and participants to the proceedings as soon as possible." *Id.* Consistent with the regulations, the 2016 Guidelines require the court to instruct the participants to inform it of any new information that provides a reason to know the child is an Indian child, and in situations where a child was not identified as an Indian child in a prior proceeding, the court has a continuing duty to inquire whether the child is an Indian child. *Id.* Further, if there is no reason to know a child is an Indian child, the State agency (or party seeking placement) should document the basis for this conclusion in the case file. *Id.* at 12.

¶ 16    We begin with the observation that the Department specifically acknowledged its § 19-1-126(1)(a) obligation to make *continuing* inquiries "as to any possible Indian heritage of any of the children" in the dependency and neglect petition.  However, it has not directed our attention to any evidence of such continuing inquiries, and it does not argue on appeal that such inquiries occurred.  Indeed, because the court made no findings to support its conclusion that ICWA did not apply, we are unable to determine what evidence the court considered in reaching its conclusion.

¶ 17    The Department suggests that the court may have relied on its finding that ICWA did not apply in the previous case to support its conclusion that ICWA did not apply here, and it argues that such reliance satisfied ICWA requirements.  *See In Interest of C.A.B.L.*, 221 P.3d 433, 442 (Colo. App. 2009) (permitting a trial court to take judicial notice of its own records and adopt factual findings from a previous case as long as the previous case involved the same parties and the same issue); *see also* CRE 201(b) (court may take judicial notice of facts not subject to reasonable dispute).  However, nothing in § 19-1-126, ICWA, or the 2015 Guidelines permits a court to make ICWA findings by taking judicial notice of prior proceedings.

In fact, the 2016 regulations and guidelines now explicitly prohibit a court from doing so.

¶ 18    Even assuming, without deciding, that the trial court could consider its findings and orders in the prior case to determine whether the children who are the subjects of this case are Indian children — and we note that the trial court did not indicate that it had done so — we conclude that the findings and orders from the prior case *alone* are insufficient to support the trial court's conclusion that ICWA does not apply in this case.

¶ 19    Records from the prior case show that the Department inquired into Tr.D.'s possible Indian heritage, and that mother and father believed, for reasons not stated in the record, that the child was not a member of or eligible for membership in any Indian tribe. Possibly, mother and father were unaware of any Indian heritage in their families. Alternatively, they may have been aware of some Indian heritage, but they may have believed that the child could not meet the criteria for membership in the identified possible tribe(s). Or they may have had other reasons for their belief that the child could not, or should not, be identified as an Indian child. The record in this case shows no renewal inquiries. Yet it reveals the

active participation of grandparents with the Department, who may have had pertinent information concerning Indian heritage that was unknown to the parents.

¶ 20    We agree that in determining whether ICWA applies to the current proceeding, the court could properly consider a finding that, in 2013, mother and father denied that Tr.D. was an Indian child. However, the trial court could not rely *solely* upon that prior finding to determine that ICWA does not apply here. To do so would fail to give effect to § 19-1-126(1)(a), which obligates the Department to make continuing inquiries into a child's Indian heritage before determining whether the child is an Indian child. Such continuing inquiries are necessary to ensure that any determination is not based on information that may be outdated and incorrect. *See, e.g.*, *People in Interest of T.M.W.*, 208 P.3d 272, 275 (Colo. App. 2009) (stating that a court may not rely on notice that was given to a tribe concerning a sibling to determine whether another child is an Indian child because, even if the siblings have the same parents, the tribe is free to change its enrollment criteria at any point).

¶ 21    In the absence of findings by the trial court, we are unable to determine the basis for the court's conclusion that ICWA does not apply to this case.  Nor are we able to satisfy ourselves that the information that the court relied upon in reaching its conclusion was obtained as the result of the Department's "continuing inquiries" into the children's Indian heritage and eligibility for tribal membership, as contemplated by § 19-1-126(1)(a), rather than outdated and possibly inaccurate information.  The Department does not argue that this absence of information is harmless; it acknowledges that a "remand for the purpose of making any necessary additional inquiries" could be ordered.  Under these circumstances, we conclude that the judgment must be reversed and remanded to the trial court for additional findings and further proceedings if needed.  *See People in Interest of A.G.*, 264 P.3d 615, 621 (Colo. App. 2010) (stating that an order may be set aside if the court's findings do not demonstrate compliance with statutory requirements and the appellate court cannot determine the basis for the order), *rev'd in part and vacated in part on other grounds*, 262 P.3d 646 (Colo. 2011).

¶ 22    Accordingly, on remand the Department must make the inquiries required by § 19-1-126(1)(a).  If those inquiries reveal possible Indian heritage, then the Department must comply with the statute's notice requirements.  If the inquiries reveal no possible Indian heritage, then the trial court may enter its termination order based on its prior findings and the evidence adduced from the Department's inquiries.  Because it is possible that no ICWA notice will be required, and that, even if notice is required, no tribe will determine that the children are eligible for tribal membership, we also address the remaining issues raised by mother and father.

## IV.    Sufficiency of the Evidence

¶ 23    Mother contends that the trial court erred in finding that the statutory grounds for terminating her parental rights under § 19-3-604(1)(c), C.R.S. 2016, were established by clear and convincing evidence.  Specifically, she argues that she was progressing in her substance abuse treatment, she was able to maintain employment, she interacted well with the children, she complied with most of the requirements of her treatment plan, and she would have been able to complete the other requirements within a reasonable time.  She contends the record does not

support the trial court's finding that her conduct or condition will not change within a reasonable time. We disagree.

¶ 24 Under § 19-3-604(1)(c), the legal relationship between a parent and his or her child may be terminated if the child has been adjudicated dependent or neglected and the court finds, based on clear and convincing evidence, that the parent did not reasonably comply with a treatment plan approved by the court or that the treatment plan has been unsuccessful, that the parent is unfit, and that the parent's conduct or condition is unlikely to change within a reasonable time.

¶ 25 When a proceeding involves children under the age of six, reasonable or successful compliance with a treatment plan cannot be found if "[t]he parent exhibits the same problems addressed in the treatment plan without adequate improvement" and remains unable to meet the children's needs. § 19-3-604(1)(c)(I)(B); *People in Interest of J.A.S.*, 160 P.3d 257, 260 (Colo. App. 2007).

¶ 26 In determining whether a parent's conduct or condition is unlikely to change within a reasonable time, the trial court may consider whether any change has occurred during the pendency of the dependency and neglect proceeding, the parent's social history,

and the chronic or long-term nature of the parent's conduct or condition. *K.D. v. People*, 139 P.3d 695, 700 (Colo. 2006).

¶ 27    A reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). A trial court's findings and conclusions will not be disturbed on review if the record supports them. *K.D.*, 139 P.3d at 702.

¶ 28    The trial court found that despite more than fifteen months of intervention and treatment, mother exhibited the same problems addressed in the treatment plan without any meaningful improvement, and she was unable or unwilling to meet the children's needs. The court also found that mother's conduct or condition was unlikely to change within a reasonable time.

¶ 29    These conclusions are based on lengthy and detailed factual findings supported by the record that contradict mother's claims on appeal. Among other things, the record shows that mother did not complete a substance abuse assessment until June 2015, two months after adoption of her treatment plan and four months after the children's initial removal. She attempted outpatient substance

abuse therapy, but attended less than fifty percent of the sessions and was terminated for poor attendance. She eventually completed an inpatient program, but relapsed almost immediately thereafter. Her employment was sporadic, and she incurred criminal charges during the case. She and father were often late for visits or cancelled them.

¶ 30    The record, therefore, amply supports the trial court's findings and conclusions, and we will not disturb them.

## V.    Reasonable Efforts

¶ 31    Father contends that the record does not support the trial court's finding that reasonable efforts were made to avoid the removal of the children from their home and to promote reunification of the family, as required by § 19-3-100.5, C.R.S. 2016. He argues that the Department's opposition to changing venue from Chaffee County, which does not have a Family Intensive Drug Court (FITC), to Fremont County, which has an FITC program, represents a failure to make reasonable efforts. More specifically, he argues that the dispute over whether venue should be changed delayed his ability to participate in an FITC program "when [he was] motivated to engage in treatment." He reasons "[r]easonable efforts

16

require[d] more than providing adequate services, they require[d] providing such services at the right time." We perceive no error.

¶ 32    The state must make reasonable efforts to prevent out-of-home placement of an abused or neglected child and to reunite the family. §§ 19-1-103(89), 19-3-100.5(1), C.R.S. 2016; *see also People in Interest of S.M.A.M.A.*, 172 P.3d 958, 963 (Colo. App. 2007). Such reasonable efforts must include screening, assessments, the development of an appropriate treatment plan, the provision of information and referrals to available public and private assistance resources, placement services, and visitation services, all as determined necessary and appropriate in a particular case. § 19-3-208(2)(b), C.R.S. 2016.

¶ 33    In July 2015, mother requested a transfer of venue to Fremont County, where she and father lived. She conceded they both had significant substance abuse issues and needed the intensity of Fremont County's FITC program. The Department and the guardian ad litem opposed the motion, in part due to concerns that the children would be transferred to a different foster home. The Department consulted with Fremont County's Department of Human Services and learned that if venue was changed, such a

transfer was likely. Additionally, the Department considered the parents' admission into the FITC program "questionable," in part because the eligibility criteria precluded the use of a "prescribed inhibitor" such as Suboxone, which the Department believed father had been prescribed.

¶ 34 The court observed that Fremont County had offered to collaborate with Chaffee County to provide FITC services to mother and father, minus the court oversight, while Chaffee County retained jurisdiction over the case. The court proposed holding the motion in abeyance while mother and father sought FITC services. Father agreed with this proposal.

¶ 35 Soon afterward, a Fremont County supervisor attempted to arrange a meeting with mother and father so that she could discuss the program, have them sign the necessary papers, and start scheduling appointments. However, mother and father repeatedly rescheduled this initial meeting and then failed to appear. They never took advantage of the opportunity to receive FITC services. And the record does not reflect any effort by father to seek a ruling on the outstanding motion.

¶ 36 We conclude that father waived his right to raise this issue on appeal when he expressly agreed to hold the motion to change venue in abeyance, and thereafter failed to seek a ruling from the court. Accordingly, we will not consider it. *See People in Interest of N.A.T.*, 134 P.3d 535, 537 (Colo. App. 2006) (stating that where mother did not object to the allocation of parental responsibilities to father during the hearing before the juvenile court, instead agreeing that the disposition was in the child's best interests, the appellate court would not consider her contention on appeal that the allocation was not in the child's best interests).

## VI. Conclusion

¶ 37 The judgment is reversed, and the case is remanded for the Department to conduct inquiries into the children's possible Indian heritage. If such inquiries reveal possible Indian heritage, then the Department must comply with the notice provisions of § 19-1-126 and ICWA, and the court must conduct further proceedings as necessary. If the inquiries reveal no possible Indian heritage, or if, after any required notice, no tribe has determined that the children are eligible for tribal membership, then the court may enter its

termination order based on its prior findings and the evidence adduced from the Department's inquiries.

JUDGE HAWTHORNE and JUDGE ASHBY concur.