24CA0245 Peo in Interest of NLG 09-05-2024

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 24CA0245
Las Animas County District Court No. 22JV30010
Honorable Dawn Marie Mann, Judge

_____

The People of the State of Colorado,

Appellee,

In the Interest of N.L.G. and L.G., Children,

and Concerning E.V. and J.G.,

Appellants.

_____

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE TOW
Gomez and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 5, 2024

_____

Josi McCauley, Special County Attorney, Superior, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for E.V.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for J.G.

¶ 1　　　In this dependency and neglect proceeding, E.V. (mother) and J.G. (father) each appeal the juvenile court's judgment terminating their parent-child legal relationships with N.L.G. and L.G. (the children).  We affirm.

## I.　Background

¶ 2　　　The Las Animas County Department of Human Services investigated reports that mother was abusing drugs with the children, who were then three years old and three months old, in her care.  The Department had previously opened dependency and neglect cases and removed the older child from the parents' custody on two occasions.  Those cases were ultimately closed because mother attained sobriety, though father never engaged with the Department or participated in any services to address his substance use and domestic violence.

¶ 3　　　After several attempts to contact mother following the latest report, a Department caseworker met with her.  During this interaction, mother repeatedly began to fall asleep to the point that the caseworker was concerned mother would drop the infant child.  At the caseworker's request, mother completed a drug screen, which was positive for morphine and methamphetamine.

¶ 4     Given father's history, the caseworker inquired about father's involvement with the family. According to mother, father did not live with mother or the children but would occasionally come to the home.

¶ 5     The older child, N.L.G., has spina bifida, and requires a wheelchair and frequent catheterization. Shortly after the Department became involved with the family for the third time, both children tested positive for multiple controlled substances, including both opiates and amphetamines.

¶ 6     After the investigation, the Department filed a petition in dependency and neglect. The court adjudicated the children dependent and neglected and adopted treatment plans for both parents.

¶ 7     Each parent's treatment plan required them to (1) participate in family time, take parenting classes, and complete a parent-child interactional evaluation; (2) comply with probation and refrain from further criminal activity; (3) complete a substance abuse evaluation, engage in any recommended treatment, and submit drug screening samples; (4) complete a mental health assessment and follow all

recommendations; (5) communicate with case professionals and sign releases of information; and (6) maintain appropriate housing.

¶ 8 Eight months after the treatment plans were adopted, the Department moved to terminate mother's and father's parental rights, alleging that they had not complied with their treatment plans and remained unfit. After a hearing, a magistrate granted the motion. The parents jointly petitioned for district court review. The juvenile court denied the parents' petition and adopted the magistrate's order terminating parental rights.

## II. Legal Framework

¶ 9 A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the children have been adjudicated dependent or neglected; (2) the parent did not comply with or was not successfully rehabilitated by an appropriate, court-approved treatment plan; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024; *People in Interest of E.S.*, 2021 COA 79, ¶ 10. When a court decides whether a parent is unfit or whether their conduct or condition will change, it must evaluate whether the Department's reasonable efforts have been unable to

rehabilitate them.  § 19-3-604(2)(h); *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).

¶ 10      If the children are under six years old when the petition is filed, as in this case, the court must also consider the expedited permanency planning (EPP) provisions, which require that the children be placed in a permanent home as expeditiously as possible.  §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024; *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 25.

¶ 11      In determining whether the court erred by terminating parental rights under section 19-3-604(1)(c), we review the court's factual findings for clear error but review its legal conclusions de novo.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

### III.    Treatment Plan Compliance and Fitness in a Reasonable Time

¶ 12      Mother contends that the juvenile court erred when it concluded that she did not comply with her treatment plan and could not become a fit parent within a reasonable time.  We perceive no error.

### A.    Relevant Law

¶ 13      Because this case is subject to the EPP provisions, the juvenile court could not find that mother reasonably complied with a

treatment plan if she "exhibit[ed] the same problems addressed in the treatment plan without adequate improvement." § 19-3-604(1)(c)(I)(B). Although absolute compliance with a treatment plan is not required, even substantial compliance might not be sufficient to correct or improve the parent's conduct or condition, or to render the parent fit. *People in Interest of T.E.M.*, 124 P.3d 905, 909 (Colo. App. 2005).

¶ 14     An appropriate treatment plan aims to render the parent fit to provide adequate parenting to the children within a reasonable time. *See* § 19-1-103(12), C.R.S. 2024; *People in Interest of K.B.*, 2016 COA 21, ¶ 13. A "reasonable time" is not indefinite and is determined by considering the children's physical, mental, and emotional needs. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). "In determining whether the parent's conduct or condition is likely to change within a reasonable time, the court may consider whether a change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the conduct or condition." *S.Z.S.*, ¶ 24.

## B. Analysis

¶ 15    The juvenile court determined that mother did not reasonably comply with her treatment plan and "therefore, the treatment plan was unsuccessful." It then concluded that mother was unfit and could not become fit within a reasonable time. The record supports these findings.

¶ 16    The caseworker testified that mother completed a parenting class and a parent-child interactional evaluation. Nevertheless, the caseworker — whom the court qualified as an expert in child welfare — opined that mother was not able to "demonstrate an understanding of how her lifestyle choices have affected her ability to safely parent." The caseworker confirmed that mother's family time with the children had recently been going very well, but, overall, mother missed more than half of the in-person visits that the Department scheduled for her.

¶ 17    The record shows that mother's probation from an earlier criminal conviction was revoked during this case. Thus, mother had not been able to comply with probation, as her treatment plan required. Indeed, at the time of the termination hearing, she had

been sentenced and was in the custody of the Colorado Department of Corrections (CDOC).

¶ 18    Although mother eventually completed substance abuse and mental health evaluations, she did not attend any recommended substance abuse or mental health counseling until she was incarcerated after having her probation revoked. Similarly, before she was incarcerated, she did not comply with all of her court-ordered sobriety testing. Of the samples she submitted for testing, approximately half were positive for methamphetamine, fentanyl, or other drugs.

¶ 19    Before her incarceration, mother did not maintain regular contact with the Department. And, at the time of the termination hearing, mother had not yet found safe housing.

¶ 20    By the termination hearing, the case had been open for approximately twenty months. The caseworker opined that keeping the case open longer would not be beneficial and that mother was not likely to change within a reasonable time. In reaching this conclusion, the caseworker considered mother's history with the Department, including her two previous dependency and neglect cases. The caseworker testified that, given mother's previous cases

dealing with the same concerns, mother exhibited the same problems she had at the case's opening. She opined that mother "can comply [with treatment plans], but as soon as the Department no longer has any involvement, we're back involved with the same concerns [of substance use]." Ultimately, the caseworker opined that the young children could not wait longer for mother to comply with her treatment plan and that termination of parental rights was in their best interests.

¶ 21 The record supports the juvenile court's finding that mother — despite recent progress with her treatment plan requirements — was unable to overcome her lengthy history of noncompliance in order to become fit within a reasonable time given the children's needs. We therefore cannot disturb the court's ruling on appeal.

## IV. Reasonable Efforts

¶ 22 Mother and father both contend that the juvenile court erred when it concluded that the Department made reasonable efforts to rehabilitate them and reunify the family. We perceive no error.

### A. Relevant Law and Standard of Review

¶ 23 Before a juvenile court may terminate parental rights under section 19-3-604(1)(c), the county department of human services

8

must make reasonable efforts to rehabilitate parents and reunite families.  §§ 19-3-100.5(1), 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.  Reasonable efforts means the "exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114).

¶ 24     Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  § 19-1-103(114).  Among the services required under section 19-3-208 are screenings, assessments, and the development of individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. § 19-3-208(2)(b); *see also People in Interest of A.D.*, 2017 COA 61, ¶ 32.  Other services, including transportation assistance, must also be provided if the government has sufficient funding.  § 19-3-208(2)(d).

¶ 25     The purpose of a treatment plan is to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required the government's intervention.  *K.D. v. People*, 139 P.3d 695, 699 (Colo. 2006).  The juvenile court should

consider whether the services provided were appropriate to support the parent's treatment plan, *S.N-V.*, 300 P.3d at 915, by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. But the parent is ultimately responsible for using the services to comply with the plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). And the court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 26 Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.*

B. Mother's Contention

¶ 27 Mother argues that the Department did not exercise diligence and care, as required by the definition of reasonable efforts, when it

did not include any services related to mother's and father's relationship, including domestic violence therapy. We read this as a contention that her treatment plan was inappropriate. We disagree with mother.

¶ 28    A treatment plan's appropriateness is measured by its likelihood of success in reuniting the family and is assessed in light of the facts existing at the time the plan was adopted. *People in Interest of S.L.*, 2017 COA 160, ¶ 10. In determining whether a treatment plan is appropriate, the court must consider whether the plan's objectives adequately address the safety concerns that led to the filing of the petition. *K.B.*, ¶ 14.

¶ 29    Here, the caseworker testified that no "current domestic violence issues" were brought to the Department's attention in this case. And although the caseworker confirmed that domestic violence concerns existed in mother's previous cases, she opined that no "type of allegation about [domestic violence] was[] relevant to this particular case." Domestic violence is not listed as a reason for the case's filing.

¶ 30    Moreover, notwithstanding the absence of services specifically related to mother's and father's relationship, we perceive no error in

the court's conclusion that the Department made reasonable efforts. *See My.K.M.*, ¶ 33 (accounting for all services when determining the sufficiency of a department's efforts). The Department referred mother to parenting classes, arranged for a parent-child interactional, and set up family time for her with the children. It also referred mother to a mental health assessment provider and therapists. Mother did not comply with any of her treatment plan objectives for the first fifteen months of the case. Further, the fact that the only time mother was able to make progress was when she was incarcerated speaks just as much to the presence of someone — whether the Department caseworker or the CDOC — watching over her behavior as to the absence of father in her life.

¶ 31 We conclude that the Department satisfied its obligation to provide reasonable efforts.

### C. Father's Contention

¶ 32 Father argues that the juvenile court erred by concluding that the Department made reasonable efforts when the Department did not (1) provide him with transportation assistance; (2) stay in

communication with him; or (3) provide him with more opportunities to sign releases.  We perceive no error.

¶ 33    The record shows that the Department offered father transportation assistance.  The caseworker testified that, although father was not provided gas vouchers or bus schedules, "the Department offered transportation," which father declined.  Similarly, although it is father's responsibility to comply with his treatment plan, the record shows that father did not stay in communication with the Department or keep the Department updated with his contact information.  *J.C.R.*, 259 P.3d at 1285.  The record also shows that father did not sign release paperwork, as his treatment plan required, despite reminders that he needed to do so during court hearings he attended.

¶ 34    The record supports the juvenile court's factual findings regarding the efforts the Department made.  In light of those findings, it is clear that the Department exercised reasonable efforts.

## V.    Less Drastic Alternatives

¶ 35    Both parents claim that the juvenile court erred by concluding there were no less drastic alternatives to termination in this matter. We are not convinced.

### A.    Relevant Law

¶ 36    Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122-23 (Colo. 1986). In considering less drastic alternatives, a court must give primary consideration to the children's physical, mental, and emotional conditions and needs. § 19-3-604(3); *People in Interest of Z.P.*, 167 P.3d 211, 214 (Colo. App. 2007). Long-term placement may not be a viable alternative to termination if the children need a stable, permanent home that can be assured only by adoption. *Z.P.*, 167 P.3d at 214. We must affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

### B.    Mother's Contention

¶ 37    Mother argues that additional time to comply with her treatment plan was a viable less drastic alternative to termination.

We disagree that giving mother more time constitutes a less drastic alternative. The less drastic alternatives analysis involves the consideration of whether a placement arrangement would satisfy the children's best interests. *See People in Interest of A.R.*, 2012 COA 195M, ¶ 44 (considering whether an allocation of parental responsibilities would satisfy the child's best interests). Therefore, we construe mother's claim as a challenge to the court's finding that her conduct or condition was unlikely to change within a reasonable time under section 19-3-604(1)(c)(III). We have already concluded that the court did not err in that determination.

## C.   Father's Contentions

¶ 38    Father asserts that the Department did not "properly investigate and explore all relatives." He also asserts that the Department did not determine if the children's placement would accept an allocation of parental responsibilities (APR). The record belies these assertions and supports the court's conclusion that "[l]ess drastic alternatives have been considered and ruled out as not being in the best interest[s] of the child[ren]."

¶ 39    When considering less drastic alternatives to termination, the Department is not required to independently identify and evaluate

15

possible placement options. *Z.P.*, 167 P.3d at 215. Instead, the Department is only required to evaluate a reasonable number of persons the parent identifies as placement options. *People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2004).

¶ 40    The caseworker testified that the Department provided father with a relative affidavit, but he did not fill it out. Nevertheless, the caseworker testified that the Department identified and provided notice to all of the children's known relatives. The Department specifically investigated paternal aunt and paternal grandfather, but the caseworker opined that these placements would not have been safe for the family. Paternal aunt had "an extensive criminal history" and paternal grandfather, who also had a criminal background, told the caseworker that he "was not going to cooperate with the Department."

¶ 41    The record also shows that the Department talked with the children's foster placement about the possibility of APR. When father's counsel asked whether it would be a possibility "just to award custody to the foster placement," the caseworker responded, "[w]e've talked with the foster parents about that." The caseworker

also testified that she "discussed permanency" with the children's foster placement and that they are an "adoptive placement."

¶ 42 Given this evidence, which supports the court's determination that no less drastic alternatives to termination existed in this case, we will not disturb it on appeal.

## VI. Disposition

¶ 43 The judgment is affirmed.

JUDGE GOMEZ and JUDGE KUHN concur.