The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 28, 2017

**2017COA160**

**No. 16CA2238, *People in Interest of S.L.* — Juvenile Court — Dependency and Neglect — In Camera Interview — Due Process**

This case presents an issue of first impression, namely whether a parent is entitled to have his or her counsel present when a trial court conducts an in camera interview of children in a dependency and neglect proceeding. In Part III.A.2.a of the opinion, a division of the court of appeals concludes that whether to grant such a request is within a trial court's sound discretion, based upon a number of case-specific considerations. Applying these factors and the principles discussed in *People in Interest of H.K.W.*, 2017 COA 70, the division concludes that the trial court did not abuse its discretion in (1) the decision to conduct an in camera interview of the children; (2) the manner and contents of the interview; or (3) the weight it accorded the information obtained

during the interview in making its findings in support of its termination order.

The division also concludes that the trial court did not abuse its discretion in finding that the Rio Blanco County Department of Human Services (Department) used reasonable efforts to reunify the parents with their children. Further, the division rejects father's ineffective assistance of counsel claim. Finally, the division concludes that the trial court did not abuse its discretion in permitting the Department's expert witnesses to testify at the termination hearing notwithstanding certain deficiencies in the Department's C.R.C.P. 26 disclosures.

The division, therefore, affirms the trial court's termination order.

Court of Appeals No. 16CA2238
Rio Blanco County District Court No. 15JV3
Honorable John F. Neiley, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of S.L. and A.L., Children,

and Concerning L.L. and K.L.,

Respondent-Appellants.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE WELLING
Dailey and Vogt*, JJ., concur

Announced December 28, 2017

Kent A. Borchard, County Attorney, Meeker, Colorado, for Petitioner-Appellee

Anna N.H. Ulrich, Guardian Ad Litem

Patrick R. Henson, Respondent Parents' Counsel, Longmont, Colorado, for Respondent-Appellant L.L.

Pamela K. Streng, Georgetown, Colorado, for Respondent-Appellant K.L.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     In this dependency and neglect proceeding, K.L. (mother) and L.L. (father) appeal from the judgment terminating their parent-child legal relationships with S.L. and A.L. (the children). Among the issues raised on appeal is an issue of first impression, namely whether a parent is entitled to have his or her counsel present when a trial court conducts an in camera interview of a child in a dependency and neglect proceeding. In Part III.A.2.a, we conclude that whether to grant such a request is within a trial court's sound discretion, based upon a number of case-specific considerations. Based on our resolution of this issue and the other claims raised on appeal, we affirm.

## I.  Background

¶ 2     The parents came to the attention of the Rio Blanco County Department of Human Services (Department) as a result of concerns about the welfare of the children due to the condition of the family home, the parents' use of methamphetamine, and criminal cases involving the parents. In January 2015, the parents voluntarily entered into an agreement for services with the Department whereby they retained physical custody of the children

and committed to individual and substance abuse counseling and monitoring.

¶ 3    In April 2015, after four months of voluntary services and following reports of continued methamphetamine use, the Department filed a petition in dependency or neglect for the children.  The petition alleged that the parents had used illegal drugs which affected their ability to appropriately parent the children and they had also failed to provide the children with appropriate and safe housing.

¶ 4    The parents subsequently entered admissions to the allegation that the children lacked proper parental care.  The court adjudicated the children dependent and neglected and subsequently adopted treatment plans for the parents.

¶ 5    Later, the Department moved to terminate the parent-child legal relationships with the children.  After considering the evidence presented at a three-day hearing, the trial court terminated both mother's and father's parental rights.

¶ 6    The parents separately appeal the trial court's decision.  We first address the parents' contentions that the Department failed to use reasonable efforts to reunify them with their children.  Next, we

address the separate contentions father raises on appeal. We conclude that none of the contentions merit reversal of the trial court's judgment.

## II. Reasonable Efforts

¶ 7    The parents contend that the Department failed to make reasonable efforts to reunify them with their children. Father argues that (1) he should have been provided inpatient treatment for his drug problem; (2) he was not provided with sufficient time to complete the services required by his treatment plan; and (3) the Department failed to accommodate his scheduling needs with regard to the drug testing and visitation. Mother argues that the Department (1) did not provide her with sufficient time to complete essential services required by her treatment plan; (2) failed to provide proper referrals and case management services; and (3) did not provide reasonable monitored sobriety testing. We are not persuaded that the trial court erred in finding that the Department had made reasonable efforts to ensure the parents would be successful in completing their treatment plans.

## A. Governing Law

¶ 8    A court may terminate the parent-child legal relationship pursuant to section 19-3-604(1)(c), C.R.S. 2017, if clear and convincing evidence establishes that (1) an appropriate treatment plan, approved by the trial court, has not been complied with by the parent or has not been successful in rehabilitating the parent; (2) the parent is unfit; and (3) the conduct or condition of the parent is unlikely to change within a reasonable time. *People in Interest of A.J.L.*, 243 P.3d 244, 251 (Colo. 2010).

¶ 9    The state must make reasonable efforts to prevent out-of-home placement of an abused or neglected child and to reunite the family. §§ 19-1-103(89), 19-3-100.5(1), C.R.S. 2017; *see also People in Interest of S.M.A.M.A.*, 172 P.3d 958, 963 (Colo. App. 2007). Such reasonable efforts must include screening, assessments, the development of an appropriate treatment plan, the provision of information and referrals to available public and private assistance resources, placement services, and visitation services, all as determined necessary and appropriate in a particular case. §§ 19-3-100.5(5), -208(2)(b), C.R.S. 2017; *People in Interest of A.D.*, 2017 COA 61, ¶ 32.

¶ 10    A treatment plan is appropriate if it "is reasonably calculated to render the [parent] fit to provide adequate parenting to the child within a reasonable time and . . . relates to the child's needs." § 19-1-103(10); *see also People in Interest of K.B.*, 2016 COA 21, ¶ 13. The appropriateness of a parent's treatment plan is "measured by its likelihood of success in reuniting the family and by the extent to which its requirements were realistic in light of the facts existing at the time it was adopted." *People in Interest of J.M.B.*, 60 P.3d 790, 792 (Colo. App. 2002).

¶ 11    It is the parent's responsibility to comply with the treatment plan. *Id.* at 791. Absolute compliance is not required. *People in Interest of C.L.I.*, 710 P.2d 1183, 1185 (Colo. App. 1985). However, partial compliance, or even substantial compliance, may not be sufficient to render the parent fit. *People in Interest of D.L.C.*, 70 P.3d 584, 588 (Colo. App. 2003).

¶ 12    "The credibility of witnesses, the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn therefrom are all within the province of the [trial] court . . . ." *E.S.V. v. People,* 2016 CO 40, ¶ 24. We will not disturb

the trial court's findings unless they are so clearly erroneous as to find no support in the record. *Id.*

## B. Analysis

### 1. The Parents' Treatment Plans

¶ 13 The parents' treatment plans were essentially identical and required the following action steps:

- The parents will cooperate with all medical, psychiatric, and parenting evaluations and provide honest reporting of problems with the family unit.

- The parents will attend their treatment sessions and will not be tardy, cancel, or reschedule more than one session in a one-month period.

- The parents will address current and past substance abuse issues and will be able to identify the reasons and motivation behind their substance abuse.

- The parents will submit up to three random and observed drug screens per week.

- The parents will participate in weekly, supervised visits with the children and will comply with the parameters for

visitation. Visitations will progress to unsupervised and overnight status.

- The parents will attend Alcoholics Anonymous/Narcotics Anonymous (AA/NA) meetings a minimum of once per week.

- The parents will make relationship choices that prioritize the safety and well-being of their children.

- The parents will demonstrate the ability to provide sufficient financial and household management resources to support their children.

- The parents will verbalize and demonstrate their understanding of criteria that must be maintained for the family to become reunified.

¶ 14 Approximately six months before the termination hearing, the Department modified mother's treatment plan at mother's request to clarify certain objectives. The modified treatment plan continued to emphasize mother's need to address substance abuse issues and included a provision regarding relapse prevention skills. It also included a component requiring mother to reduce her anxiety by participating in specialized therapy, learning to identify her triggers, and increasing her coping skills. Finally, it provided that mother

would participate in bimonthly couple's therapy to improve her communications skills with father.

## 2. Services Offered to the Parents

¶ 15 Pursuant to the parents' voluntary agreement and treatment plans, the Department provided numerous services to the parents, including substance abuse therapy, therapeutic visitation supervision, drug abuse monitoring, and a parental capacity evaluation. The Department also provided counseling for the children.

¶ 16 As the trial court noted, the Department used drug testing to determine if the parents were complying with the treatment plans' objectives regarding substance abuse. Drug testing was accomplished by having the parents submit to random drug tests up to three days per week. On a designated day, the parents would check whether they had to go in for testing, which would be performed within a specified time frame.

¶ 17 Records kept by the Department showed that during an eighteen-month period, father was to be drug tested eighty-six times; he failed to submit samples fifty-one times, and for the thirty-five samples he submitted, thirty-two were negative and three

were positive. During that same period, mother was to be drug tested one hundred and thirty-one times; she failed to submit samples seventy-five times, and for the fifty-six samples she submitted, forty-five were negative and eleven were positive.

¶ 18    As the trial court found, the parents' failure to comply with the drug testing requirements demonstrated a lack of compliance with this part of the treatment plans. Similarly, as discussed below, the parents' arrests for possession of methamphetamine during the pendency of the case showed a continued failure to address their substance abuse issues.

¶ 19    Shortly before the termination petition was filed, the parents were arrested on charges of possession with intent to distribute methamphetamine. Approximately twenty-two grams of methamphetamine were discovered in the parents' business premises. Mother pleaded guilty to two counts of possession (level four drug felonies) and one count of possession with intent to distribute (a level three drug felony). In November 2016, mother was sentenced to four years in the custody of the Colorado Department of Corrections (DOC). Father pleaded guilty to possession with intent to distribute (a level three drug felony). In

December 2016, he was sentenced to three years in DOC custody. The Department also provided individual therapy to both parents. The record shows that father attended thirty-five out of forty scheduled therapy sessions. Father's therapist reported that father did not demonstrate significant progress toward his treatment goals, which included submitting to drug tests, going to AA/NA meetings, and completing relapse prevention homework. The therapist opined that father lacked the ability to make the necessary changes to overcome his problems.

¶ 20     Mother's therapist, who also treated father, reported that mother did not take accountability for even the smallest actions. This contributed to her inability to progress therapeutically. She felt that mother merely showed up to appease the court and did not meaningfully attempt to change her behavior. The therapist also testified that mother did not complete any relapse prevention homework. And, although mother was given a medication referral for anxiety, she did not take steps to contact a doctor to obtain anxiety medication.

¶ 21     The Department also sought to improve the parents' interactional skills with the children through counseling and visits

with the children. The parents' visitation supervisor and family therapist, Elaine Johnson-Williams, oversaw forty-six visits, totaling sixty hours, and testified that the parents repeatedly violated rules regarding how the visits were to take place. Johnson-Williams also opined that the parents did not develop healthy parenting skills, and they did not improve enough to progress from individual therapy to family therapy, and that the children needed permanency which the parents could not provide.

¶ 22 The Department also had a "Capacity to Parent Assessment" performed on the parents. The assessors opined that father did not "demonstrate the necessary skill development and parenting training required to manage various developmental stages and provide the children with consistent and appropriate parenting." They also opined that father "demonstrated below average parenting knowledge and an inability to assess misbehavior from a broad prospective, including consideration of underlying issues that may cause the child's misbehavior." The assessors reached nearly identical conclusions as to mother.

### 3. The Parents' Objections

#### a. Insufficient Time to Complete Action Steps

¶ 23    The parents contend that the Department failed to provide them with sufficient time to complete the services required by their treatment plans. In particular, father asserts that the Department filed its motion to terminate only seventy-seven days after the treatment plans were adopted. He contends that seventy-seven days was an insufficient period in which to achieve compliance with the treatment plans.

¶ 24    As noted, however, the parents began a voluntary program with the Department in January 2015, and those voluntary services covered many of the issues that became part of the treatment plans, including the parents' substance abuse issues. Thus, the parents received services for approximately nine months before the motion to terminate was filed. In addition, the termination hearing was not held until more than a year after the motion to terminate was filed. During that period, the parents were provided services and had the opportunity to comply with their treatment plans.

¶ 25	Therefore, we conclude that the trial court did not err in concluding that the parents were provided sufficient time to establish compliance with their treatment plans.

## b. Visitation/Drug Testing/Referrals

¶ 26	The parents also contend that the Department did not accommodate their drug testing needs to allow them to succeed on this component of their treatment plans. Father asserts that the Department failed to modify the drug testing schedule to accommodate his work schedule. He also asserts that because he had worked out of state, the Department should have allowed him to perform the drug tests where he was working. Similarly, father contends that the visits with the children were scheduled in the middle of the week, hindering his ability to attend those visits.

¶ 27	Mother objects to the manner in which the drug testing was conducted and to the presumption that any missed tests were treated as positive. But we conclude that the method employed in conducting the tests, although not perfect, was reasonably structured to monitor compliance. In addition, there was evidence that the Department sought to accommodate the parents' needs by coordinating the drug testing with the visits. There was also

13

evidence that the parents could have sought modifications in the testing procedures but failed to do so.

¶ 28 Father's caseworker testified that she attempted to work with father to arrange for alternative drug testing when he was out of town for work. Moreover, she testified that father did not maintain consistent communication with the Department and that he did not provide her with the necessary information so that she could facilitate the testing.

¶ 29 And, despite father's assertions, the record shows that the Department oversaw forty-six supervised visits between the parents and the children. Thus, although father was unable to make certain visits when he was working out of the area, he still was able to attend a number of the scheduled visits with his children.

¶ 30 Mother also contends that the Department failed to provide proper referrals and case management services pursuant to her treatment plan. However, it is apparent that mother, at times, had either failed to schedule or failed to attend appointments with recommended providers. And, as indicated above, the Department made numerous services available to mother.

14

¶ 31    Therefore, we conclude that the Department worked to provide the parents with necessary and needed services.  The parents, however, did not always partake in the services offered, follow through with the recommended services, or communicate effectively with the Department so that alternatives could be provided to accommodate their circumstances.

### c.  Inpatient Drug Treatment

¶ 32    Father argues that he should have been provided inpatient treatment for his drug problem.  However, despite a suggestion by a substitute judge in August 2015 that the parents might benefit from inpatient treatment, neither father nor his counsel indicated that his treatment plan was inappropriate because it did not include such services.  Instead, at that time, father's counsel agreed with the court that the treatment plan was achievable, appropriate, and in the best interests of the children.  And, although father subsequently indicated that he would be open to inpatient treatment as an alternative to setting a termination hearing date, there were questions about whether he would be eligible to participate in an inpatient treatment program because of his pending criminal case.

¶ 33    Therefore, we conclude that the trial court did not err by finding that the Department used reasonable efforts notwithstanding the fact that it did not include inpatient treatment as part of the treatment plan or subsequently amend the treatment plan to require inpatient treatment.

## d. Conclusion

¶ 34    In summary, we conclude that the record shows that the Department made reasonable accommodations to meet the needs of the parents.  We also conclude that the record sufficiently supports the trial court's findings, by clear and convincing evidence, that termination was appropriate.  These findings support the conclusions that (1) an appropriate treatment plan, approved by the court, had not been complied with by the parents or had not been successful in rehabilitating them; (2) the parents were unfit; and (3) the conduct or condition of the parents was unlikely to change within a reasonable time.  *See* § 19-3-604(1)(c); *A.J.L.*, 243 P.3d at 251.

## III.  Father's Separate Appellate Issues

¶ 35    Father raises three other issues in his appeal.  First, he contends that the trial court's decision to interview the children in

chambers fundamentally and seriously affected the basic fairness and integrity of the proceedings and violated his due process rights. Father also contends that he was provided ineffective assistance of counsel because his trial counsel failed to meet discovery and disclosure deadlines for an expert witness. Finally, father contends that the trial court abused its discretion and violated his due process rights by allowing five of the Department's witnesses to testify as experts despite the Department's failure to comply with C.R.C.P. 26(a). We address and reject each of these contentions.

## A. In Camera Interview of Children

### 1. Factual Background

¶ 36 In March 2016, the trial court adopted a permanency plan, with the primary goal being adoption and a concurrent goal of returning home. In April 2016, the guardian ad litem (GAL) filed a motion for an in camera interview of the children pursuant to section 19-3-702(3.7), C.R.S. 2017, which requires the court to consult with children in an age-appropriate manner regarding their permanency plans. When the GAL filed her motion, the children, who are twins, were nine years old.

17

¶ 37    In support of her motion, the GAL also referenced section 19-1-106(5), C.R.S. 2017, which provides that a child may be heard separately when deemed necessary by the court, and section 14-10-126(1), C.R.S. 2017, of the Uniform Dissolution of Marriage Act (UDMA), which allows the court to conduct in camera interviews with children to determine their wishes regarding allocation of parental responsibilities.  The GAL also attached a memorandum from a third party (the Rocky Mountain Children's Law Center) that advocated for in camera interviews with children in dependency and neglect cases.

¶ 38    In response, father objected to the in camera interviews due to the age of the children and his concern about potential trauma to them.  Father argued further that, if the trial court was going to proceed with the interviews, the children should be interviewed separately and the interviews should be conducted in the presence of counsel and be recorded so that the parties could obtain a transcript.  Mother also objected to the in camera interviews based on the age of the children and because they were represented by a GAL who could advocate for their positions.

¶ 39     The trial court granted the GAL's motion for an in camera interview of the children. The court ruled that the children would be interviewed together and would be the only ones present during the interview, but that the interview would be recorded and that all parties could request a copy of the transcript. In June 2016, more than five months before the termination hearing, the court interviewed the children in chambers; and the interview was recorded and transcribed. A copy of the transcript of the interview was provided to the parties in advance of the termination hearing. The trial court subsequently noted in its termination order that it had considered the children's wishes based on that interview.

2.  Legal Framework and Analysis

¶ 40     The issue of whether a trial court may conduct an in camera interview of a child in a dependency and neglect proceeding was recently addressed by a division of this court in a published order. *See People in Interest of H.K.W.*, 2017 COA 70. In that order, the division addressed whether such a procedure was proper in the context of determining an allocation of parental responsibilities.

¶ 41     The division noted that under the Children's Code the trial court must allocate parental responsibilities based on the best

interests of the child and the public.  *Id.* at ¶ 12; *see* §§ 19-1-104(4), (6); 19-3-508(1)(a), C.R.S. 2017.  Similarly under the UDMA, the trial court must consider the best interests of the child in making an allocation of parental responsibilities.  *See* § 14-10-124(1.5), C.R.S. 2017.

¶ 42     The division also noted that although the Children's Code does not specifically provide for a trial court to conduct an in camera interview with a child, it does allow for a child to "be heard separately when deemed necessary."  *H.K.W.*, ¶ 14 (quoting § 19-1-106(5)).  The division further noted that the UDMA provides that a "court may interview the child in chambers to ascertain the child's wishes as to the allocation of parental responsibilities."  *Id.* at ¶ 15 (quoting § 14-10-126(1)).  Based on those two provisions, the division concluded that a trial court may conduct an in camera interview of a child to determine the child's best interests in allocating parental responsibilities in a dependency and neglect proceeding.  *Id.* at ¶ 17.

¶ 43     The division then determined whether the court was required to create a record of the interview given that the Children's Code is silent on the issue.  *Id.* at ¶ 19.  Again, relying on the UDMA, the

division noted that the UDMA requires a trial court to create a record of the interview and provides that it "shall be made part of the record in the case." *Id.* (quoting § 14-10-126(1)). The division was also persuaded by cases from other jurisdictions that imposed such a requirement, noting that a record ensures support for any findings regarding the interview and allows for meaningful appellate review of the evidence relied on by the trial court. *Id.* at ¶¶ 20-22.

¶ 44　　The division further concluded that a record of the in camera interview must be made available, upon request, to parents when a parent needs to (1) determine whether the trial court's findings are supported by the record and (2) contest information supplied by the child during the interview. *Id.* at ¶ 27.

¶ 45　　With these concepts in mind, we turn to father's specific objections.

　　　a.　The Trial Court Did Not Abuse its Discretion by Excluding Counsel from the Interview

¶ 46　　First, father argues that the trial court reversibly erred in denying his request to permit counsel to be present during the interview. We are not persuaded.

¶ 47    Initially, we note that the division in *H.K.W.* did not address whether counsel must be permitted to be present during the trial court's in camera interview of a child. And courts in other jurisdictions are divided on whether counsel must be permitted to be present during the in camera interview. The jurisdictions requiring counsel's presence on request have done so on the ground that the parents' due process right of confrontation would be violated if counsel were not permitted to be present. *See, e.g.,* *Maricopa Cty. Juvenile Action No. JD-561*, 638 P.2d 692, 695 (Ariz. 1981) (termination proceeding is adversarial in nature and the parents must be given the opportunity to challenge the testimony of their children); *In Interest of Brooks*, 379 N.E.2d 872, 881 (Ill. App. Ct. 1978) (parents' right to confront all witnesses against them was violated when the court allowed child to testify outside their presence in the court's chambers). Other courts have not found that the Confrontation Clause requires the presence of counsel and have held that the trial court has discretion to determine whether counsel should be permitted to be present during the in camera interview. *See, e.g., In re James A.*, 505 A.2d 1386, 1391 n.2 (R.I. 1986) (trial court has discretion over whether counsel may be

22

present during an in camera interview); *Hasse v. Hasse*, 460 S.E.2d 585, 682 (Va. Ct. App. 1995) (no bright-line rule that counsel must be present during an in camera interview of a child in divorce proceeding).

¶ 48    A division of this court has held that the Sixth Amendment's right of confrontation does not extend to dependency and neglect cases. *People in Interest of S.X.M.*, 271 P.3d 1124, 1127 (Colo. App. 2011). The trial court's decision whether to terminate parental rights, like the allocation of parental responsibilities considered in *H.K.W.*, must be based on the best interests of the child. *See People in Interest of D.P.*, 160 P.3d 351, 356 (Colo. App. 2007); *see also* § 19-3-604(3) (court must give primary consideration to the physical, mental, and emotional needs of the children).

¶ 49    Therefore, based on the reasoning in *H.K.W.*, and the foregoing cases, we are not persuaded that counsel must be permitted to be present during an in camera interview of a child in a dependency and neglect proceeding. Rather, we conclude that this determination is best left to the discretion of the trial court on a case-by-case basis. In making this determination, the trial court should consider, among other things, the age and maturity of the

23

child, the nature of the information to be obtained from the child, the relationship between the parents, the child's relationship with the parents, any potential harm to the child, and ultimately any impact on the court's ability to obtain information from the child. *See Hasse*, 460 S.E.2d at 590. In addition, although not requested here, in the interests of fairness and to allow for the development of a full record, the trial court should allow the parents or trial counsel to submit questions to the child, which the court may ask in its discretion. *See James A.*, 505 A.2d at 1391. Further, the interview, regardless of whether counsel is present, must be on the record, and, if timely requested by any party and the trial court anticipates relying on information from the interview in ruling on a termination motion, a transcript of the interview must be made available to the parties in advance of a termination hearing (as the trial court did here). *See H.K.W.*, ¶¶ 26-28; *In re T.N.-S.*, 347 P.3d 1263, 1271 (Mont. 2015) ("Due process considerations may require disclosure in certain instances, particularly where the district court relies on information from the interviews in reaching its determination."); *see also* § 19-1-106(3) ("A verbatim record shall be taken of all proceedings."). Finally, in considering the weight to

24

accord the information obtained from a child during an interview, the trial court should be mindful that the information did not pass through the crucible of cross-examination.

¶ 50    Next we turn to the question whether the trial court abused its discretion in denying father's request for his counsel to be present during the interview.  We conclude that it did not abuse its discretion (and that even if it did, any error was harmless).

¶ 51    In a written order, the trial court granted the GAL's motion to interview the children outside of the presence of counsel.  But that written order did not contain any findings as to why it was denying father's request for his counsel to be present for the interview.  Nevertheless, where, as here, an abuse of discretion standard applies, "the test is not 'whether we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options.'"  *People in Interest of T.B.*, 2016 COA 151M, ¶ 60 (*cert. granted* Aug. 21, 2017) (quoting *People v. Rhea*, 2014 COA 60, ¶ 58).  And given the circumstances here, including the young age of the children (nine years old at the time of the interview), the acknowledgement by the GAL and both parents that because of their tender age this was going to be a difficult process

25

for them, and, as acknowledged by father, the presence of counsel may be a "hindrance" to the objective of the interview, we conclude that trial court's decision to exclude counsel from its on-the-record interview of the children fell squarely within a range of reasonable options. Accordingly, we discern no abuse of discretion. *Id.* at ¶¶ 60-61.

¶ 52    Moreover, even if the trial court's failure to make any factual findings was arguably an abuse of discretion, *see People v. Hardin*, 2016 COA 175, ¶ 30 ("A court's failure to exercise discretion can be an abuse of discretion."), we conclude that the error was harmless in light of the limited weight the trial court gave the information obtained from the interview in its termination order. The trial court did not rely on the interview to resolve any contested historical facts, such as the events that led to the Department's involvement with the family or whether the parents had complied with their treatment plans. Instead, the trial court's reliance on the interview was limited to the wishes of the children. Indeed, in its twenty-one page termination order, the trial court made the following three references to its interview of the children:

- "The [c]hildren did not participate in the hearing, but the [c]ourt previously conducted an informal, in chambers interview with the [c]hildren. A transcript of that interview was provided to all the parties. In entering this Order, the [c]ourt has therefore considered the [c]hildren's wishes."

- "In their interview with the [c]ourt, the [c]hildren expressed that they liked their current placement and had a desire to achieve permanency with that family."

- "The [c]hildren report that it has been 'a long time' since they were placed in the home. They both expressed a wish to be adopted by their foster parents. The [c]hildren are doing generally well at school although both are struggling with homework."

And the trial court's findings regarding these issues were supported by the testimony of witnesses who testified at the termination hearing (i.e., evidence separate and apart from the court's interview of the children).

¶ 53     Thus, even if the exclusion of counsel without making any findings was an abuse of discretion, we conclude that doing so was harmless. Accordingly, we conclude that the exclusion of father's

27

counsel from the interview of the children does not warrant reversal.

### b. The Trial Court Did Not Abuse its Discretion by Declining to Conduct Separate Interviews

¶ 54 Next, father contends that the trial court erred in not conducting separate interviews of the children. We are not persuaded. As we indicated above, the procedures for conducting an in camera interview are best left to the discretion of the trial court. Nothing indicates that the trial court abused its discretion by not conducting separate interviews of the children, particularily in light of the young age of the twins. Nor do we discern any way in which conducting this interview jointly was prejudicial.

### c. The Content of the Interview Does Not Require Reversal

¶ 55 Father contends that certain answers the trial judge gave to the children's questions regarding his favorite game, liar's dice, and his favorite action as a judge, performing adoptions, were improper. We do not share father's concerns that the content of the interview requires reversal. First, the court's statements were made after the children hald already shared with the court that they were happy in their current placement and that they wanted to "stay." Moreover,

28

the trial judge's answers were obviously aimed at maintaining a rapport with the children. Nevertheless, in so concluding, we note that a judge must maintain impartiality to avoid the appearance of favoring a particular outcome. That said, it does not appear that the judge's answers influenced the answers given by the children, and we do not perceive any prejudice to father.

### 3. Conclusion: The Trial Court Did Not Abuse Its Discretion With Respect to the Interview of the Children

¶ 56    For the reasons discussed above, we conclude that father's due process rights were not violated by the trial court's exclusion of his counsel from the in camera interview, by not conducting separate interviews of the children, or by the nature of the interview. Thus, although the trial court did not have the benefit of this opinion or the decision in *H.K.W.*, we conclude that the trial court acted within its discretion in granting the GAL's request to interview the children, and that it did not abuse its discretion in the procedures that it followed nor in the weight it accorded to the information elicited.

## B. Ineffective Assistance of Counsel

¶ 57    Father next contends that he was provided ineffective assistance of counsel because his trial counsel failed to meet discovery and disclosure deadlines for an expert witness. We conclude that the record fails to demonstrate the necessary prejudice to establish a claim based on ineffective assistance.

### 1. Governing Law

¶ 58    A parent's right to appointed counsel in termination proceedings is secured by statute, and not by constitutional mandate. *People in Interest of A.J.*, 143 P.3d 1143, 1148 (Colo. App. 2006). Nevertheless, when evaluating a claim of ineffective assistance of counsel in termination proceedings, Colorado courts employ the same test that governs claims of ineffective assistance of counsel in criminal cases. *People in Interest of C.H.*, 166 P.3d 288, 290-91 (Colo. App. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003)).

¶ 59    Based on this test, the parent must show that counsel's performance was (1) outside the wide range of professionally competent assistance and (2) so prejudicial that it deprived the parent of a fair hearing. *People in Interest of D.G.*, 140 P.3d 299,

30

308 (Colo. App. 2006). Prejudice is shown by demonstrating a reasonable probability that, but for counsel's alleged deficiencies, the outcome of the termination proceeding would have been different. *Id.*

¶ 60 If the parent's allegations lack sufficient specificity or fail to make a prima facie showing of ineffective assistance, the parent's claim may be denied without further inquiry. *C.H.*, 166 P.3d at 291. And the failure to establish one prong of the two-part test defeats a claim for ineffective assistance. *See D.G.*, 140 P.3d at 308.

## 2. Analysis

¶ 61 In response to father's argument, the People assert that the record demonstrates that the parents' retained expert, Michael Costello, was unable to file an expert report with the court because of a lack of cooperation by the parents. The People also assert that any prejudice to father was alleviated by the trial court allowing Costello to testify as a lay witness at the hearing. Because we are persuaded by the People's latter contention, we need not reach the first.

¶ 62    Although father's retained expert was not allowed to testify as an expert at the hearing, he was allowed to testify as a lay witness. At the hearing, he conveyed his observations of a visitation the parents had with the children a couple of weeks prior to the termination hearing.

¶ 63    Costello's observations were conflicting. He testified that he found the volume of father's voice to be distracting and that the children seemed to raise their energy level in response. Conversely, he opined that father expressed his affection verbally with the children and shared some physical touch with them that was appropriate for the activity. Similarly, he described mother's method of affection toward the children and noted that she engaged in more physical touch. He also discussed in some detail the activities that the family engaged in during the visit.

¶ 64    Although Costello was not able to express an expert opinion regarding whether termination was appropriate, he was able to testify regarding the interactions between the parents and the children. Even if we agree that father's counsel was deficient in not ensuring that the retained expert had prepared an expert report in time for the termination hearing so that he could have testified as

32

an expert, it is not apparent that the trial court would have ruled differently given Costello's testimony. And, as the trial court noted in its termination order, the parents continued to have substance abuse problems and almost all of the experts who testified agreed that termination was appropriate.

¶ 65 Based on the foregoing, we conclude that father has failed to demonstrate a reasonable probability that, but for counsel's alleged deficiencies, the outcome of the termination proceeding would have been different. *See D.G.*, 140 P.3d at 308.

## C. Department's Expert Witnesses

¶ 66 Father further contends that the trial court abused its discretion and violated his due process rights in allowing five of the Department's witnesses to testify as experts despite the Department failing to comply with C.R.C.P. 26(a). We are not persuaded.

## 1. Governing Law

¶ 67 C.R.C.P. 26(a) specifies that a party shall provide, without awaiting a discovery request, certain information to other parties. C.R.C.P. 26(a)(2) governs expert disclosures and provides that a party shall disclose to other parties the identity of any expert who may present evidence at trial together with an identification of the

person's fields of expertise. *See* C.R.C.P. 26(a)(2)(A). The rule also specifies disclosures for retained experts and other experts. *See* C.R.C.P. 26(a)(2)(B)(I)-(II). Although the provisions of C.R.C.P. 26, including its expert witness disclosure requirements, are inapplicable to juvenile proceedings unless ordered by the court or stipulated to by the parties, C.R.C.P. 26(a); *see also People in Interest of K.T.*, 129 P.3d 1080, 1082 (Colo. App. 2005), the trial court ordered that they would govern in this case.

¶ 68     The admission of expert testimony is subject to review for an abuse of discretion. *See People in Interest of A.E.L.*, 181 P.3d 1186, 1193 (Colo. App. 2008). An abuse of discretion occurs only when the trial court's decision is manifestly arbitrary, unreasonable, or unfair. *See People in Interest of S.G.*, 91 P.3d 443, 450 (Colo. App. 2004).

## 2. Analysis

¶ 69     At the termination hearing, father's counsel objected to the testimony of three of the People's experts (Chris Young, Kimberly Maestas Cannon, and Johnson-Williams) because the People had failed to disclose, with specificity, the prior cases in which the experts had testified, including case names, case numbers, and

dates.  The trial court, however, did not find that father had incurred any prejudice and allowed all three experts to testify regarding the reports they had prepared for the case, which had been disclosed to father before the hearing.

¶ 70    Father also objected to the expert testimony of three expert witnesses, including one of the experts objected to above, because the People failed to specify a particular area of expertise for two experts (Cannon and Diaz) and another expert (Thayn) was listed as a licensed counselor when she was only a candidate to become a licensed counselor.  With regard to two of the experts (Diaz and Thayn), the trial court limited their testimony to what they had disclosed in their reports.  As to the other expert (Cannon), the trial court, despite some deficiencies in the disclosure, found that her report had been adequately disclosed and qualified her as an expert in the areas sought by the People.

¶ 71    We discern no abuse of discretion by the trial court with respect to any of the Department's experts.  We reach this conclusion for two reasons.

¶ 72    First, father never argued to the trial court how he was prejudiced by the defects in the Department's expert disclosures.

35

To be sure, a failure to properly disclose an expert's prior testimony may be prejudicial as an "expert's past testimony may be useful when the opposing party seeks to impeach that expert during cross-examination . . . ." *Trattler v. Citron*, 182 P.3d 674, 682 (Colo. 2008). Similarly, a lack of pretrial specificity as to an area of expertise may hinder cross-examination of an expert. But father never articulated such a basis as a rationale for barring the experts from testifying. Indeed, when he objected at the termination hearing, he cited nothing other than the Department's technical noncompliance with the rule as the rationale for barring the testimony. Nor did he request a continuance. We discern no abuse of discretion in the trial court permitting the testimony under these circumstances. *See Ajay Sports, Inc. v. Casazza*, 1 P.3d 267, 275 (Colo. App. 2000) (no abuse of discretion in permitting an expert to testify notwithstanding a deficiency in the disclosure of prior testimony where the objecting party "does not specify what additional information he could have elicited on cross-examination or how the absence of such information caused him prejudice," "[n]or did he ask for a continuance").

¶ 73    Second, the deficiencies in the disclosures identified by father on appeal go primarily to the experts' qualifications to offer expert testimony. But the parties stipulated in the trial management order that "[a]ll experts endorsed by any party are qualified as experts in their listed areas of expertise without the necessity of further testimony." In addition, the parties stipulated that "[a]ll exhibits timely endorsed by any Party are admissible as to foundation, authentication, and relevance."[1] Thus, in light of the pretrial stipulation, we discern no abuse of discretion in the trial court permitting the experts to testify notwithstanding the deficiencies in the Department's disclosures.

---

[1] During a trial readiness conference held the day after the stipulation was reached, the Department objected to father's expert testifying as an expert at the termination hearing because the expert had not prepared and provided a report setting forth his opinions. *See* Part III.B. Father contends that the Department's objection to his expert vitiated the parties' stipulation. We are not persuaded. Father's endorsement of his expert, which was appended to the stipulation, said that his expert's "report and statement of opinions are forthcoming," but such report had not been prepared and was not forthcoming. That was the basis on which the trial court ruled that father's witness' testimony would be limited to lay testimony. In contrast, the Department's expert reports had been disclosed and were included as exhibits subject to the parties' stipulation. Moreover, unlike the Department, father's counsel did not identify any deficiencies in the Department's expert disclosures during the trial readiness conference.

¶ 74     As the trial court noted, the reports by the various experts had been adequately disclosed to father.  Thus, despite inadequacies in the C.R.C.P. 26 disclosures regarding the prior cases in which the experts had previously testified and the listed areas of expertise for the experts, the bases for the experts' testimony at the hearing had been disclosed to father.  Therefore, we conclude that the trial court did not abuse its discretion in concluding that father was not prejudiced by the inadequate C.R.C.P. 26(a) disclosures. Accordingly, the judgment will not be reversed on this basis.

## IV.  Conclusion

¶ 75     The trial court's judgment terminating the parent-child legal relationships between the children and mother and father is affirmed.

JUDGE DAILEY and JUDGE VOGT concur.