25CA0286 Peo in Interest of BW 11-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0286
Arapahoe County District Court No. 22JV30171
Honorable Bonnie H. McLean, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of B.W., S.W., and J.W., Children,

and Concerning T.W.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE PAWAR
Freyre and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

---

Ron Carl, County Attorney, Tamra White, Assistant County Attorney, Sarah Simchowitz, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, T.W. (father) appeals the judgment terminating his parent-child legal relationships with B.W., S.W., and J.W. (the children).  He challenges the juvenile court's determinations that (1) the Arapahoe County Department of Human Services made reasonable efforts to rehabilitate him and reunite his family; (2) his treatment plan was appropriate; and (3) no less drastic alternative to termination was available.  We affirm.

## I.    Background

¶ 2    In September 2022, the Department filed a petition in dependency and neglect concerning then-two-year-old, one-year-old, and two-month-old children.  The Department alleged that in the two years prior to filing the petition, it had received numerous reports that the children had been subjected to an injurious environment, neglect, and physical abuse.  The Department had also received referrals concerning the parents' mental health and substance use.

¶ 3    By the time it filed the petition, the family had been working with the Department on a voluntary basis for around five months.  About three weeks before the petition was filed, the youngest child

1

was injured and taken to the hospital by ambulance. The parents agreed to a safety plan in which the children could remain in the parents' home.

¶ 4 When the parents did not comply with the safety plan and father stopped communicating with the Department, the Department filed the petition. Additionally, the court ordered the parents to complete skeletal surveys of all three children.

¶ 5 After the youngest child's survey revealed three healing rib fractures, the Department requested a verbal removal order, which the juvenile court granted. The children were briefly placed with kin before being placed in foster care.

¶ 6 Two months later, the juvenile court adjudicated the children dependent or neglected. The court adopted a treatment plan that required father to communicate with the Department, create and maintain financial stability, address mental health and substance use issues, develop protective parenting skills, and maintain a legal lifestyle.

¶ 7 The court later amended father's treatment plan to require child-parent psychotherapy (CPP).

¶ 8    Almost two years after filing the petition, the Department moved to terminate the parents' rights.  The court held a three-day termination hearing in January 2025 and granted the motion.

¶ 9    Both parents appealed the termination judgment.  But unfortunately, mother passed away during the pendency of the appeal, and this court granted her counsel's motion to dismiss her appeal.  Thus, we address only father's appeal.

## II.    Reasonable Efforts

¶ 10    Father contends that the juvenile court erred by determining that the Department made reasonable efforts to rehabilitate him and reunite him with the children.  We are not persuaded.

## A.    Preservation

¶ 11    The Department and guardian ad litem argue that father's reasonable efforts claim is unpreserved, and therefore, we should not address it.  However, we need not decide if father's challenge to the court's reasonable efforts determination is properly before us because, even assuming it is, we discern no reversible error.[1]

---

[1] Because we address the merits of father's reasonable efforts claim, we need not address his secondary argument that, if the challenge is unpreserved, it is due to his counsel's ineffective assistance.

## B. Applicable Law and Standard of Review

¶ 12    A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.  As pertinent here, to determine whether a parent is unfit, the juvenile court must consider whether "[r]easonable efforts by child-caring agencies . . . have been unable to rehabilitate the parent." § 19-3-604(2)(h); *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).  Thus, the determination that the department made reasonable efforts is implicit in a court's determination that a parent is unfit.

¶ 13    "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement.  § 19-1-103(114), C.R.S. 2025.  Services provided in accordance with section 19-3-208, C.R.S. 2025, satisfy the reasonable efforts standard.  § 19-1-103(114).

4

¶ 14    Under section 19-3-208, a department must provide screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; and placement services. § 19-3-208(2)(b).  And, if funding is available, section 19-3-208 requires a department to provide services such as transportation, diagnostic and mental health services, and drug and alcohol services.  § 19-3-208(2)(d).  However, services must be provided only if they are determined to be necessary and appropriate based on the individual case plan.  § 19-3-208(2)(b), (d).

¶ 15    In analyzing whether a department made reasonable efforts, a juvenile court should consider the totality of the circumstances and account for all services and resources provided to a parent to ensure the completion of the entire treatment plan.  *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.  A juvenile court may consider a parent's unwillingness to participate in treatment as a factor in determining whether a department made reasonable efforts.  *People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 16     Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. Therefore, we review the juvenile court's factual findings on the issue for clear error but review de novo the court's legal determination as to whether the department satisfied its reasonable efforts obligation. *Id.*

¶ 17     Nonetheless, a juvenile court does not need to make express findings about the department's specific efforts or lack thereof. And failure of the court to make express findings, on its own, does not establish a failure by the court to ensure that the department made reasonable efforts. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 15; *see also People in Interest of M.D.*, 2014 COA 121, ¶ 37 (finding no reversible error despite the absence of specific findings regarding reasonable efforts). Rather, in reviewing de novo the ultimate question of whether the department's efforts satisfied its obligation, we will not reverse if the record amply demonstrates that the department made reasonable efforts to rehabilitate a parent and reunite them with their family. *A.S.L.*, ¶ 15.

## C.  Analysis

¶ 18     The juvenile court heard expert testimony from the caseworker and the CPP therapist.  Crediting their testimony, the court found that that the Department offered "multiple treatments" to father, but he failed to engage in them.  It also found that the caseworker "worked really hard on this case."  The court noted that the caseworker's attempts to engage with the parents and provide services were well documented.  Thus, the court concluded that the Department made reasonable efforts to rehabilitate father.

¶ 19     Having reviewed the record, we conclude that there is ample support for the court's findings and its ultimate determination that the Department made reasonable efforts.  First, the caseworker testified that at the outset of the case, the Department had significant safety concerns because there appeared to be "an ongoing pattern of non-accidental trauma" while the children were with the parents.  To that end, the Department was concerned that father was not being honest or taking accountability for the children's injuries discovered by medical providers.  Moreover, the caseworker testified that, at the time the case opened, the Department was concerned about father's substance use for several

reasons: He had an open warrant related to a drug charge; he initially refused to take a hair follicle or urinalysis test; and he tested positive for "several substances," including methamphetamine, when he finally submitted a urinalysis test. Further, the Department was concerned about father's ability to provide protective parenting and a stable home for the children.

¶ 20    Next, the caseworker testified about the Department's ongoing efforts to help father address those concerns. She testified that she regularly reached out to father throughout the case and attempted to meet with him on numerous occasions, but father's communication with her was inconsistent, as he often cancelled their meetings at the last minute. The caseworker said that when she was able to communicate with father, he typically focused on denying any fault and questioning why he was included in this case.

¶ 21    The caseworker continued to explain that when she learned that father may have lacked housing, she texted him to provide housing resources, but father said that he did not need help with housing. However, father never allowed the caseworker to inspect his home. And, although the caseworker attempted to verify

father's claim that he was employed throughout the case, father never provided her with any paystubs or other verification. The caseworker also asked father to sign a release of information for her to speak to his probation officer, but father refused to sign it.

¶ 22 The caseworker testified that she referred father for three different dual diagnosis evaluations to assess his mental health and substance use issues. When the third evaluator recommended substance abuse treatment and mental health treatment, the caseworker ensured father scheduled an intake appointment for that treatment. But father testified that he did not go to that appointment or engage in treatment because he did not believe that the third evaluator's recommendations were valid or that he needed substance abuse and mental health treatment.

¶ 23 The Department also set up weekly supervised family time for father to visit the children. And the caseworker referred father to CPP. Although the CPP referral came later in the case, the CPP therapist testified that the delay did not impact her ability to engage with the family. She testified father "had a lot of missed appointments," and when she tried to determine if there were barriers preventing father from attending, he stated that

9

transportation was not an issue and "reaffirmed that the park was a good place for him to meet." But, ultimately, she discharged father from CPP for failing to attend the therapy sessions.

¶ 24 Based on the foregoing, we conclude that the record amply supports the juvenile court's determination that, based on the totality of the circumstances and considering father's unwillingness to engage in services, the Department made reasonable efforts. *See My.K.M.*, ¶ 33; *A.V.*, ¶ 12.

¶ 25 Father points to several specific alleged deficiencies in the Department's efforts as evidence that it did not meet its reasonable efforts obligation. Specifically, he argues that the Department did not make reasonable efforts because it (1) delayed its referrals for dual diagnosis evaluations; (2) failed to provide sufficient family time; (3) failed to refer him to parenting classes; (4) delayed its referral for CPP; (5) failed to provide housing, transportation, and phone assistance; and (6) failed to provide family preservation services to kin. We are not persuaded.

¶ 26 First, we note that the juvenile court did not make specific findings about each of these alleged deficiencies, nor was it required to do so. *See A.S.L.*, ¶ 15. And we cannot fault the juvenile court

for failing to do so because father never told the juvenile court about the alleged deficiencies or asked the court to make findings about them.

¶ 27 To that end, we can only review the findings that the juvenile court made. For example, father argues that the Department failed to refer him to parenting classes. If father had alerted the court to this alleged deficiency, then it could have made findings about whether parenting classes were necessary to rehabilitate father and whether the Department failed to refer father to those classes. And we could have reviewed those findings for clear error. *See People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10 (we review findings of fact for clear error). But we cannot *make* those findings, which is essentially what father asks us to do. *See Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 18 (noting that trial courts make factual findings while appellate courts pronounce law); *see also People in Interest of J.L.*, 121 P.3d 315, 318 (Colo. App. 2005) ("[W]e cannot make factual findings of our own.").

¶ 28 Last, even assuming that the Department's efforts were lacking in some of the ways that father describes, he does not explain how the deficiencies, in the context of the totality of the

circumstances, rendered the court's reasonable efforts determination erroneous. For example, father does not explain how the alleged deficiencies — the referral delays; insufficient parenting time; or lack of parenting classes, transportation, a phone, and housing resources — prevented him from engaging in treatment and addressing his substance use issues, which was one of the primary reasons the Department was involved with the family. *See My.K.M.*, ¶ 33 (The department "retain[s] discretion to prioritize certain services or resources to address a family's most pressing needs in a way that will assist the family's overall completion of the treatment plan."). Given the ample support, discussed above, for the court's reasonable efforts determination, we cannot say that the alleged deficiencies would have rendered that determination erroneous.

¶ 29 In sum, we conclude that the juvenile court's factual findings about the Department's reasonable efforts are supported by the record. And those findings are sufficient to support the court's ultimate determination that the Department made reasonable efforts to rehabilitate father and reunite his family. Accordingly, reversal based on a lack of reasonable efforts is not warranted.

### III. Treatment Plan

¶ 30 Father also contends that the juvenile court erred by finding that his treatment plan was appropriate, that he failed to comply with it, and that he was therefore unfit. We disagree.

#### A. Applicable Law and Standard of Review

¶ 31 An appropriate treatment plan is one that relates to the child's needs and is reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time. § 19-1-103(12). Appropriateness is measured by the likelihood of success in reuniting the family and by the extent to which the plan's requirements were realistic in light of the facts existing at the time it was adopted. *People in Interest of S.L.*, 2017 COA 160, ¶ 10. In determining whether a treatment plan is appropriate, the court must consider whether the plan's objectives adequately address the safety concerns that led to the filing of the petition. *People in Interest of K.B.*, 2016 COA 21, ¶ 14. The fact that a treatment plan is ultimately unsuccessful does not mean that it was inappropriate. *Id.*

¶ 32 The parent is responsible for assuring compliance with and the success of the treatment plan. *People in Interest of C.T.S.*, 140

13

P.3d 332, 335 (Colo. App. 2006).  Absolute compliance with every

provision of the treatment plan is not required.  *Id.*  However,

partial compliance, or even substantial compliance, may not be

sufficient to render the parent fit.  *People in Interest of T.E.M.*, 124

P.3d 905, 909 (Colo. App. 2005).

¶ 33    In determining whether a juvenile court erred by terminating

parental rights under section 19-3-604(1)(c), which necessarily

includes determining whether a parent's treatment plan was

appropriate and whether the parent was fit, we review the court's

factual findings for clear error but review its legal conclusions de

novo.  *S.R.N.J-S.*, ¶ 10.

B.    Analysis

1.    Treatment Plan Was Appropriate

¶ 34    In its oral ruling, the juvenile court found that father's

treatment plan addressed the "factors existing at the time [it] was

adopted" and was reasonably calculated to render father fit within a

reasonable period of time.  Thus, the court concluded that the

treatment plan was appropriate.  And the record supports the

court's findings because it shows that the treatment plan objectives

addressed the Department's specific concerns about father's ability

to parent the children at the time the petition was filed and during the months leading up to the plan's approval — it addressed father's substance use, stability, and protective parenting, which were the primary reasons the Department became involved with the family. *See K.B.*, ¶ 14.

¶ 35　To the extent that father argues that the mental health and substance use objectives were inappropriate because two dual diagnosis evaluators did not recommend treatment, we disagree. Because the evaluations were completed after the treatment plan was adopted, the evaluator's recommendations had no bearing on the appropriateness of the treatment plan. *See S.L.*, ¶ 10 (appropriateness of a treatment plan is assessed in light of the facts existing at the time the plan was adopted). Moreover, the court found that a third dual diagnosis evaluation was necessary because father was not honest with the first two evaluators, and those evaluators had not considered the collateral information provided by the caseworker. In making that finding, the court specifically weighed the evidence and credited the caseworker's testimony. And we cannot reweigh the evidence or make credibility determinations on appeal. *See People in Interest of K.L.W.*, 2021 COA 56, ¶ 62; *see*

*also People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010) (the credibility of the witnesses, as well as the sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions to be drawn from the evidence, are all subject to the juvenile court's discretion)

¶ 36　Accordingly, we discern no error in the juvenile court's finding that father's treatment plan was appropriate and reasonably calculated to render him fit.

### 2.　Treatment Plan Compliance

¶ 37　After considering the evidence presented at the termination hearing, the court found, with record support, that father failed to comply with several aspects of his treatment plan.　Specifically, it found that father had not consistently communicated with the caseworker, that he did not sign required releases of information, that he had not demonstrated sobriety, that he did not have stable housing, and that he had not meaningfully engaged in CPP.　Based on those findings, the juvenile court concluded that father failed to sufficiently comply with his treatment plan and was therefore unfit because he had not addressed the issues that brought his family to the Department's attention.

16

¶ 38    Father argues that the court erroneously concluded that he failed to comply with his treatment plan and was unfit because he complied with at least some of the treatment plan's requirements. But the juvenile court heard the evidence about father's partial compliance and still found that father was unfit. *See T.E.M.*, 124 P.3d at 909 (partial or even substantial compliance may not be sufficient to render the parent fit); *see also In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15 (when there is record support for the court's findings, its resolution of conflicting evidence is binding on review).

¶ 39    Accordingly, we discern no error in the juvenile court's determination that father's failure to comply with several aspects of his treatment plan rendered him unfit.

## IV.   Less Drastic Alternatives

¶ 40    Father contends that the juvenile court erred by finding that there were no less drastic alternatives to termination. He asserts that the Department failed to sufficiently investigate the child's paternal kin and that the less drastic alternative of an allocation of parental responsibilities (APR) to father's aunt was available. We discern no error.

## A. Applicable Law and Standard of Review

¶ 41 The consideration and elimination of less drastic alternatives is implicit in the statutory criteria for termination. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 40. In considering less drastic alternatives, a juvenile court must give primary consideration to the child's physical, mental, and emotional conditions and needs. *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29.

¶ 42 For a less drastic alternative to be viable, it must do more than "adequate[ly]" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child. *A.M.*, ¶ 27. Long-term or permanent placement with a family member or foster family, short of termination, may not be a viable less drastic alternative if it does not provide adequate permanence that adoption would provide or otherwise meet a child's needs. *People in Interest of A.R.*, 2012 COA 195M, ¶ 41. If a juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *A.M.*, ¶ 32.

¶ 43 "We review a juvenile court's less drastic alternatives findings for clear error." *People in Interest of E.W.*, 2022 COA 12, ¶ 34, *aff'd*

*sub nom., R.W. v. People in Interest of E.W.*, 2022 CO 51.

Accordingly, when a juvenile court considers a less drastic alternative but instead finds that termination is in the child's best interests, we are bound to affirm the court's decision so long as the record supports its findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B.    Analysis

¶ 44    The juvenile court considered less drastic alternatives to termination but ultimately concluded that termination was in the children's best interests.  Specifically, the court found that the children needed a safe, stable, and permanent home based on their very young ages and the significant trauma they had already experienced.  The court acknowledged that father's aunt was willing to accept an APR for the children but found that an APR was not in the children's best interests because it would not provide the stable, long-term home that the children needed.  And the record supports these findings.

¶ 45    We reject father's assertion that the Department failed to properly investigate father's family members as potential placements.  True, in order to assist the juvenile court in

determining whether there is a less drastic alternative to termination, a department must evaluate a reasonable number of persons the parent identifies as placement options. *People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2004). However, the juvenile court specifically found that the Department "did a very diligent search" to identify and investigate relative or kin placements, which included father's aunt.

¶ 46 The caseworker testified that she investigated all the relatives identified in the Department's September 2023 kinship search. That investigation included a home study for a distant cousin in Michigan, but the home study was denied. She also testified that, at the time of the termination hearing, the Department was actively investigating father's aunt as a potential placement for the children.

¶ 47 We also reject father's argument that the juvenile court erred by finding that an APR to father's aunt was not a viable less drastic alternative to termination. Father asserts that the court's findings erroneously "echoed" the caseworker's concerns about his aunt — that she was unwilling to be a long-term placement option, was unaware of the children's appointments, and was unwilling to allow the children's grandfather to see them. But it was within the

court's discretion to credit the caseworker's testimony and weigh its probative value. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 10.

¶ 48   Moreover, while the juvenile court acknowledged that father's aunt may be a future placement option, it categorically rejected an APR to any placement because it found an APR could not meet the children's needs. *See A.R.*, ¶ 44 (in considering less drastic alternatives, placement preferences are not relevant; rather, the court must consider "whether *any* placement, short of termination, would be in the child's best interest").

¶ 49   Indeed, both the caseworker and the family time supervisor opined that, regardless of who the children were placed with, an APR was not in their best interests. And the caseworker stated that although she had some concerns about placement with father's aunt, the Department was still considering father's aunt as a future placement option. In fact, father's aunt testified that she recently had a three-day visit with the children and that another visit was scheduled for after the termination hearing.

¶ 50   Therefore, because the record supports the juvenile court's finding that no less drastic alternatives to termination were in the

children's best interests, we discern no basis for reversal. *See B.H.*, ¶ 80.

## V.    Disposition

¶ 51    The judgment is affirmed.

JUDGE FREYRE and JUDGE YUN concur.